IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO POLICY NUMBER 13-000093, <br><br> Plaintiffs, <br><br> v. <br><br> SUNBELT RENTALS, INC., <br><br> Defendant. | Case No. _____ <br><br> Judge _____ <br><br> Magistrate _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO POLICY NUMBER 13-000093 ("Certain Underwriters"), by their undersigned attorneys, seek a declaration of the parties' rights under a contract of insurance and in support thereof allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters alleged below as follows:

**I.    THE PARTIES**

1.    Plaintiffs Certain Underwriters, severally subscribing, each for its own part and not for any other, to the policy identified in Exhibit "A" to this Complaint, are foreign entities authorized and licensed to do business in the state of Tennessee, but are not domiciled in the State of Tennessee.

2.    On information and belief, Defendant Sunbelt Rentals, Inc. ("Sunbelt") is a corporation duly organized under and subject to the laws of the state of North Carolina, with its principal place of business in South Carolina.

## II. JURISDICTION AND VENUE

3. This matter is a declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202 based upon a contract of insurance Plaintiffs issued to their insured, FCA-Demonbreun, LLC and Faison & Associates LLC.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201, because there is complete diversity of citizenship between Plaintiffs, on the one hand, and the Defendant, on the other hand, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. This Court may exercise personal jurisdiction over Sunbelt pursuant to Tenn. Code Ann. § 20-2-223.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391, because the loss location is in the Middle District, and the events leading to the loss took place in the Middle District.

7. Moreover, an actual case and controversy of a justiciable nature exists between Plaintiffs and Sunbelt involving the rights and obligations of these parties under the policy of insurance at issue.

## III. FACTS

### A. The Policy

8. Plaintiffs insured FCA-Demonbreun, LLC and Faison & Associates LLC (the "Named Insured") under an all-risk builder's risk policy, bearing policy number 13-000093, with effective dates from May 6, 2013 to December 4, 2014 (the "Policy"). A true and correct copy of the Policy is attached hereto and marked as Exhibit "A."

9. The Policy afforded first-party property coverage.

10. The Policy did not afford third-party liability coverage.

2

Case 3:17-cv-00274   Document 1   Filed 02/10/17   Page 2 of 9 PageID #: 2

11. The Policy insured a 209-unit rental residential project, located at 1505 Demonbreun Street in Nashville, Tennessee (the "Insured Project") against direct physical loss or damage.

12. The Policy also afforded limited additional insured coverage, as follows:

> To the extent required by any contract or subcontract, and then only as their respective interests may appear, any individual(s) or entity(ies) specified in such contract or subcontract are recognized as Additional Insured. As respects Architects, Engineers, Manufacturers and Suppliers, the foregoing is limited to their site activities only precluding coverage respectively under policies for Professional Liability and Products Liability and Warranty coverage as applicable.

(Exh. A, Supplemental Declarations, p. 1).

13. The Policy did not list Sunbelt as an additional insured.

14. In addition, the Policy included the following provision governing the Plaintiffs' rights of subrogation as to the Named Insured and any additional insureds:

> If the Company pays a claim under this policy, it will be subrogated, to the extent of such payment, to all the Insured's rights of recovery from other persons, organizations and entities. The Insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights.
>
> The Company will have no rights of subrogation against:
>
> A. Any person or entity, which is a Named Insured or an Additional Insured; …

(Exh. A, p. 21).

**B. The Contract Between The Named Insured And Balfour, The General Contractor**

15. On or about March 8, 2013, the Named Insured entered into a written contract with Balfour Beatty Construction, LLC ("Balfour") according to which Balfour agreed to act as the general contractor for the Insured Project (the "Balfour Contract"). A true and correct copy of the Balfour Contract is attached hereto and marked as Exhibit "B."

3

16. The Balfour Contract required the Named Insured to obtain all-risk builder's risk insurance, as follows:

> Owner will provide All Risk Builder Risk-Completed Form Insurance for the full value of the Work and will absorb deductible losses not covered by such insurance, without, however, waiving its rights to proceed against any negligent party. The builders risk policy will list as Insured's [sic], the Owner, Contractor, and any Subcontractor, as their respective interest may appear and shall include permission to occupy.

(Exh. B, General Conditions Of The Long Form Construction Contract, at ¶10).

17. The Balfour Contract then proceeded to define "Subcontractor" as "a person or entity who has a direct contract with the Contractor to perform any of the Work at the site." (See Exh. B, General Conditions Of The Long Form Construction Contract, at ¶5.1.)

18. The Balfour Contract defined "Work" as "the construction and services required by the Contract Documents … and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations." (See Exh. B, General Conditions Of The Long Form Construction Contract, at ¶1.1.3.)

19. The Balfour Contract contained exhibits entitled "list of subcontractors," but Sunbelt was not identified in these exhibits.

**C. The Subcontract Between Balfour And Sunbelt**

20. On or about November 19, 2014, Balfour entered into a subcontract with Sunbelt for the rental of equipment, including, *inter alia*, various space heaters for use at the Insured Project (the "Subcontract"). A true and correct copy of the Subcontract and Master Rental Agreement is attached hereto and marked as Exhibit "C."

21. Provision 14 of the Subcontract, entitled "Insurance," required both parties to maintain various types of insurance.

22. Specifically, Balfour was required to obtain "general liability coverage of not less than $2,000,000 per occurrence" as well as "property insurance against loss by all risks to the [rented equipment]." (See Exh. C, at ¶14).

23. Sunbelt, for its part, agreed to "maintain, at its own expense general liability insurance of not less than $2,000,000 per occurrence … for Sunbelt's contractual liabilities herein." (See Exh. C, at ¶14).

**D. The Loss**

24. On or about November 20, 2014, Balfour discovered widespread water damage at the Insured Project.

25. The subsequent cause and origin investigation revealed that the water emanated from a sprinkler head on the fourth floor of the Insured Project, which was activated because one of Sunbelt's space heaters malfunctioned.

26. As a result of the malfunctioning of Sunbelt's space heater, the Named Insured suffered loss or damage in the amount of $976,201, net of the $10,000 Policy deductible.

27. According to the terms and conditions of the Policy, Plaintiffs reimbursed the Named Insured for its loss or damage.

28. Plaintiffs then contacted Sunbelt regarding the damage the Insured Project sustained as a result of the malfunctioning of Sunbelt's space heater.

29. At this point, Sunbelt demanded additional insured status under the Policy. A true and correct copy of Sunbelt's demand for additional insured status under the Policy is attached hereto and marked as Exhibit "D."

30. Sunbelt does not seek additional insured status under the Policy to pursue a claim for damage sustained to its equipment at the Insured Project.

31. Rather, Sunbelt seeks additional insured status for the sole purpose of shielding itself from liability for the loss or damage the Named Insured sustained as a result of the malfunctioning of Sunbelt's space heater.

32. Plaintiffs have rejected Sunbelt's demand for additional insured status under the Policy.

## IV. CAUSE OF ACTION

### COUNT I
### Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202

**(Seeking Declaratory Relief That Sunbelt's Status As An Additional Insured Under the Policy, If Any, Is Limited To Coverage For Its Tools And Equipment)**

33. The allegations set forth in paragraphs 1 through 32 of this Complaint are re-alleged and incorporated as if fully set forth herein.

34. The Policy affords first-party property coverage.

35. The Policy does not afford third-party liability coverage.

36. The Policy's Additional Insured provision provides, in pertinent parts:

> To the extent required by any contract or subcontract, and **then only as their respective interests may appear**, any individual(s) or entity(ies) specified in such contract or subcontract are recognized as Additional Insured.

(Exh. A, Supplemental Declarations, p. 1) (emphasis added).

37. According to the express terms of the Policy's Additional Insured provision, a valid contract or subcontract must exist that requires that an individual or entity be added as an additional insured to the Policy.

38. Moreover, the Policy's Additional Insured provision limits the additional insured status to the respective interests of each contractor and subcontractor.

6

Case 3:17-cv-00274   Document 1   Filed 02/10/17   Page 6 of 9 PageID #: 6

39. Here, the Balfour Contract governed the contractual relationship between the Named Insured and Balfour, the general contractor.

40. The Balfour Contract only required the Named Insured to add "the Owner, Contractor, and any Subcontractor, **as their respective interest may appear**" to the Policy. (See Exh. B, General Conditions Of The Long Form Construction Contract, at ¶1) (emphasis added).

41. Furthermore, the Balfour Contract also preserved the Named Insured's "**rights to proceed against any negligent party**." (See Exh. B, General Conditions Of The Long Form Construction Contract, at ¶10) (emphasis added).

42. The Subcontract governed the contractual relationship between Balfour and Sunbelt.

43. The Subcontract required Sunbelt to maintain "general liability insurance of not less than $2,000,000 per occurrence … **for Sunbelt's contractual liabilities herein**." (See Exh. C, at ¶14) (emphasis added).

44. The Subcontract did not mandate that Sunbelt be listed as an additional insured under the Policy.

45. Plaintiffs have no contractual duty to afford Sunbelt additional insured status under the Policy for its liability arising out of any damage Sunbelt caused, intentionally or otherwise, to the Insured Project.

46. An actual substantial and justiciable controversy exists between Plaintiffs, on the one hand, and Sunbelt, on the other, involving the rights and obligations of these parties under the policy of insurance at issue.

47. As a result, pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiffs seek a judicial declaration that: (i) pursuant to the express terms of the Policy, the Balfour Contract, and the Subcontract, Sunbelt does not qualify as an additional insured under the Policy; and (ii) if Sunbelt is deemed an additional insured under the Policy, the Policy's Additional Insured provision limits such status to Sunbelt's interest, which, in the present case, is Sunbelt's ownership in the equipment it provided to the Named Insured.

48. A judicial declaration of the respective rights and obligations of the parties under the policy of insurance at issue would comport with the purpose of the Declaratory Judgment Act by serving the interests of convenience and the expedited resolution of this case.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court adjudicate and declare the rights of the parties to this lawsuit, entering an Order:

1. Declaring that Sunbelt is not an additional insured under the Policy; or

2. Declaring that, if Sunbelt does qualify as an additional insured under the Policy, Sunbelt's status as an additional insured is limited to Sunbelt's interest in its tools and equipment and does not extend to provide Sunbelt with a shield from liability for the loss or damage the Named Insured sustained as a result of the malfunctioning of Sunbelt's space heater.

3. Any other relief that the Court deems just and equitable.

Respectfully submitted,

s/ Chris Vlahos
Chris L. Vlahos, Esq. (BPR # 020318)
**Riley Warnock & Jacobson, PLC**
1906 West End Ave.
Nashville, TN 37203
Phone: (615) 320-3700
cvlahos@rwjplc.com

-and-

Matthew Gonzalez, Esq. (*pro hac* to be submitted)
Isabella Stankowski-Booker, Esq. (*pro hac* to be submitted)
**Zelle LLP**
45 Broadway, Suite 720
New York, NY 10006
Phone: (646) 876-4410
Mgonzalez@zelle.com
Istankowski@zelle.com

**ATTORNEYS FOR PLAINTIFFS CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**